UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| James S. Economou, | ) | Case No. 05 B 13171 |
| | ) | |
|       Debtor. | ) | |
| | ) | |
| Ft. Myers Historic L.P., | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
|       v. | ) | Adv. No. 05 A 1582 |
| | ) | |
| James S. Economou, | ) | |
| | ) | |
|       Defendant. | ) | |
| | ) | |
|    and | ) | |
| | ) | |
| Carol Economou and Smithers- Jones Investments, LLC, | ) | |
| | ) | |
|       Interveners. | ) | Judge Jacqueline P. Cox |

AMENDED MEMORANDUM OPINION ON FT. MYERS HISTORIC, L.P.'S
MOTION TO COMPEL DOCUMENTS

Plaintiff Ft. Myers Historic, L.P. ("Ft. Myers") asks that Attorney Bruce de'Medici be ordered to produce documents sought by subpoena on February 15, 2005 in relation to his representation of Franklin Arms Court, L.P. ("F.A.C., L.P.") and Franklin Arms Court, Inc. ("F.A.C., Inc.") in those entities' bankruptcy cases. The matter is now before this court in adversary proceeding 05 A 1582 filed on July 15, 2005.[1]

---

[1] Before the Debtor filed his bankruptcy case, Ft. Myers sued the Debtor, Carol Economou and others in Florida state court; Ft. Myers took Carol's deposition in those proceedings. The

The Ft. Myers Historic, L.P. partnership was established in 1999. Debtor James Economou was its principal; two entities that he controlled - James Economou & Associates, Ltd. ("JEA") and F.A.C., L.P. were the Operating General Partners of Ft. Myers. Ft. Myers owned the Collier Arcade Property and the Franklin Arms Court Property subject to two mortgages held by Florida Community Bank ("FCB"). The National Corporate Tax Credit, Inc. entities (the "NCTC entities") served as administrative general partners of Ft. Myers.

The Debtor guaranteed all payments due under the Collier Arcade mortgage. He also agreed to indemnify and hold Ft. Myers harmless against certain losses and claims. When the mortgage went into default, the bank filed a mortgage foreclosure action against the Collier Arcade Property in state court in Florida. The Debtor did not cure the default in breach of his contractual duty to do so; nor did he contribute capital as required by the operating agreement.

In January, 2002, Attorney Richard Brodeur ("Brodeur") represented the Debtor and his wife Carol Economou, an Intervener herein, in the transfer of Debtor's 50% interest in their home, the Sanibel house, to Carol resulting in her becoming the sole fee owner. There was no lien on the property.

In September, 2002, Attorney Brodeur appeared in the foreclosure action on behalf of Ft. Myers, the Debtor, James and Carol's son Thomas Economou and F.A.C., Inc. In October, 2002, the NCTC entities removed the Debtor-controlled F.A.C. entities from the Ft. Myers partnership because of the foreclosure action.

Attorney Brodeur later assisted Carol Economou in selling the Sanibel house to Kathleen and Stephen O'Connor. Kathleen O'Connor is Debtor's and Carol's daughter. Mr. Brodeur incorporated Smithers-Jones Investment, Inc. ("Smithers-Jones") on behalf of Carol Economou. The

---

Parties have agreed that any discovery taken in the Florida proceedings will be treated as if taken in these proceedings.

-2-

proceeds from the sale of the Sanibel house were transferred to newly formed Smithers-Jones Investment, Inc., which purchased the Collier Arcade mortgage on April 3, 2003.

The NCTC entities fired Mr. Brodeur as attorney for Ft. Myers in the foreclosure action on April 4, 2003.

Illinois Attorney Bruce de'Medici represented F.A.C., Inc. in Illinois Bankruptcy case number 02 B 48106 filed on December 16, 2002. Mr. de'Medici also represented F.A.C., L.P. in Illinois Bankruptcy case number 02 B 48101 filed on December 16, 2002.

According to Ft. Myers, Mr. de'Medici's clients, F.A.C., L.P. and F.A.C., Inc., hired Mr. Brodeur to represent Ft. Myers and the other defendants in the foreclosure action. See Circuit Court of Cook County, Illinois, Jul. 28, 2005 Transcript, at page 6.

Ft. Myers, along with other parties not relevant here, filed suit against the Debtor James Economou, Carol Economou, Smithers-Jones, Kathleen and Stephen O'Connor and the estate of Attorney Brodeur in state court in Florida. Ft. Myers filed a Miscellaneous Action in the Circuit Court of Cook County, Illinois in aid of obtaining discovery in the Florida litigation. Attorney de'Medici represented Carol and Smithers-Jones in the Illinois state court case. See Circuit Court of Cook County, Illinois, Jul. 28, 2005 Transcript, at page 39.

In the Illinois case, Attorney de'Medici was served with a Subpoena for Deposition dated February 15, 2005. Under the subpoena, Attorney de'Medici was commanded to produce all documents in his possession or control that referred or related to: (1) the Collier Arcade and Franklin Arms properties and mortgages; (2) any transfer of the Sanibel house; (3) the Economous, the O'Connors and/or Smithers-Jones; and (4) communications concerning the pending litigation. See Subpoena for Deposition & Rider to Subpoena (Feb. 15, 2005).

Attorney de'Medici initially refused to respond to the subpoena. Mr. de'Medici's clients,

Carol Economou and Smithers-Jones, supported his refusal to disclose the communications. Ft. Myers filed a motion for a rule to show cause against Attorney de'Medici for failure to produce the subpoenaed documents. Attorney de'Medici eventually responded to the subpoena but withheld 64 responsive documents, asserting the attorney - client privilege. He also asserted that the documents were privileged communications between himself and Mr. Brodeur who is now deceased. Ft. Myers argued that the documents were excepted from the privilege because of the common interest doctrine. A hearing on the motion was held on July 28, 2005; Attorney de'Medici was ordered to submit the documents for in camera review by the Illinois state court judge. See Circuit Court of Cook County, Illinois, Jul. 28, 2005 Transcript at 55.

After reviewing the documents, the Illinois state court issued a memorandum opinion and order ruling that the documents at issue were privileged. See Memorandum Opinion and Order, August 2, 2005. Relying on Illinois case law, the state court concluded that the record did not establish the existence of the requisite commonality of interest required to abrogate the attorney-client privilege once the parties became adverse because there was no evidence that Attorney Brodeur continued to represent Ft. Myers through January 2003 or in what capacity he was originally retained. See id. at 4.

Prior to the Illinois state court's ruling on Ft. Myers motion, Debtor filed this voluntary Chapter 7 case in the Northern District of Illinois on April 7, 2005. Ft. Myers filed the instant adversary proceeding against the Debtor on July 15, 2005.[2] Carol Economou and Smithers-Jones filed a motion to intervene in the adversary; an order granting their motion was entered on September 23, 2005.

Ft. Myers renewed its rule to show cause motion in the Illinois state court case on August 22, 2005. The matter was stayed by the state court. See Ft. Myers Historic LP et al v. James Economou

---

[2] The adversary seeks a determination under section 523 of the Bankruptcy Code that the Debtor owes a debt to Ft. Myers, arising out of allegedly fraudulent activity, and that the debt is excepted from his bankruptcy discharge.

-4-

et al (05 L 1696), September 15, 2005 Order. In conjunction with a separate adversary proceeding filed by the Chapter 7 Trustee assigned to the Debtor's case,[3] a Joint Discovery Plan was filed on September 5, 2006 wherein the Parties stipulated that Ft. Myers' renewed rule to show cause motion in the Illinois state court action is ripe for adjudication by this court. See Joint Discovery Plan, (filed Sept. 5, 2006), at 3-4.

After Jenner & Block, LLP ("Jenner & Block") replaced Attorney de'Medici as counsel for Carol Economou and Smithers-Jones in the pending adversary proceeding, it conducted its own privilege review of the requested documents. Jenner & Block produced 35 non-privileged items, 2 additional documents, the redacted documents and a new privilege log specifying the grounds for withholding the remaining documents. Jenner & Block submitted 67 documents for in camera review by the court.

### Common Interest Exception to the Attorney-Client Privilege

Under the attorney-client privilege, a client holds a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications between the client and the client's attorney when the communications were made to facilitate the rendition of professional and legal services to the client. See United States v. BDO Seidman, 337 F.3d 802, 811 (7th Cir. 2003); United States v. White, 970 F.2d 328, 334 (7th Cir. 1992).

When two or more clients consult or retain an attorney on matters of common interest, the communications between each of them and the attorney are privileged against disclosure to third parties. See Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 21, 29 (N.D. Ill. 1980). Accord Simpson v. Motorists Mut. Ins. Co., 494 F.2d 850, 855 (7th Cir. 1974). However, those communications are not privileged in a subsequent controversy between the clients. See Garner v. Wolfinberger, 430 F.2d 1093, 1103 (5th Cir. 1970); In re MFlex Corp., 172 B.R. 854, 860 (Bankr.

---

[3] See Barry A. Chatz, as Trustee v. Carol Economou, et al, (05-A-1853).

W.D. Tex. 1994). Accord Simpson, 494 F.2d at 855. See also 1 McCormick on Evid. § 91.1 (6th ed.). Certain privilege log entries indicate that Attorneys de'Medici and Brodeur communicated about the tax reporting responsibilities of Ft. Myers and the F.A.C. entities. Ft. Myers argues that this supports imposition of the common interest exception to the attorney-client privilege. Carol Economou and Smithers-Jones resist the imposition of the common interest exception arguing that the communications involved the F.A.C. bankruptcy matters, in which Ft. Myers and the F.A.C. entities were opponents. Ft. Myers prevailed on a motion for summary judgment therein on its claim that the F.A.C. entities had no ownership interest in the Collier Arcade property. See generally In re Franklin Arms Court, L.P., 2003 WL 1883472 (Bankr. N.D. Ill. Apr. 10, 2003); In re Franklin Arms Courts, Inc., 2003 WL 1463203 (Bankr. N.D. Ill. Mar. 20, 2003).

When Attorneys de'Medici and Brodeur discussed matters involving their joint client, F.A.C., Inc., did such communications implicate the common interest doctrine because F.A.C., Inc. was Ft. Myers' co-defendant in the foreclosure case and a member of its Operating General Partner, F.A.C., L.P.? No. The common interest exception to the attorney - client privilege can not except communications herein from the protection of the attorney-client privilege because Ft. Myers, F.A.C., Inc. and James and Carol Economou did not jointly seek Attorney Brodeur's professional services. See FDIC v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000)(listing factors courts consider when determining whether parties are "joint clients"). It is the joint effort in securing services that justifies the exception to the privilege. See id. ("[T]he joint client exception presupposes that communications have been "made in the course of the attorney's joint representation of a 'common interest' of the two parties." . . . The term "common interest" typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest.") Attorney Brodeur resisted the foreclosure matter for Ft. Myers and F.A.C., Inc. at one point. He, separately and without disclosure to Ft. Myers, assisted James and Carol Economou by transferring James' interest in the Sanibel house to Carol. See Carol Economou's Answer to Plaintiff's First Set of Requests for Admission, admissions no. 94 and 95. There was no joint representation which would put the clients on notice that their communications were in fact and in law not privileged and available to one another.

Because there was no joint effort by the clients to retain Attorney Brodeur as to all matters he handled, the clients have not afforded to each other access to otherwise privileged information. This may be, however, a classic conflict of interest on Mr. Brodeur's part. See e.g. The Fla. Bar v. Moore, 194 So. 2d 264, 269 (Fla. 1966)("[A] lawyer represents conflicting interests, . . ., when it becomes his duty, on behalf of one client, to contend for that which his duty to another client would require him to oppose."); Chase v. Bowen, 771 So. 2d 1181, 1182 (Fla. Dist. Ct. App. 2000)(same). See also Goldfarb v. Daitch, 696 So. 2d 1199, 1205 (Fla. Dist. Ct. App. 1997)(concluding that a patent conflict of interest exists where an attorney represents both sides in what should have been an arms-length business transaction); Fla. Stat. Ann. Bar R. 4-1.7 (Conflict of Interest; Current Clients). He may be subject to liability for this breach. See Resolution Trust Corp. v. Holland & Knight, 832 F. Supp. 1528, 1531 (S.D. Fla. 1993)("Generally, an attorney breaches the duty of loyalty when the attorney obtains a personal advantage from the client or when there are circumstances that create adversity to the client's interest."). See also ABA Model Rules of Professional Conduct, Rule 1.7. To allow the conflicted clients access to each other's confidential communications to Attorney Brodeur would add insult to injury, as they may be victims of the attorney's conflicted representation when their interests were adverse.

### The Crime-Fraud Exception to the Attorney - Client Privilege

The attorney-client privilege does not extend to communications between a client and the client's attorney that are in furtherance of future or ongoing criminal or fraudulent conduct. Using the privilege to shield fraudulent or criminal activity would not further its purpose or the administration of justice. See Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)("The privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'"); BDO Seidman, 337 F.3d at 810 (same); 1 McCormick on Evid. § 95 (6th ed.)("Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out an illegal or fraudulent scheme.")

A party seeking to invoke the crime - fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance of such. See Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 769 (7th Cir. 2006); In re Sulfuric Acid Antitrust Litigation, 235 F.R.D. 407, 420-21 (N.D. Ill. 2006). There must be a prima facie showing that the client was engaged in fraudulent or criminal conduct when the advice was sought, or that the client was planning such conduct. See United States v. Davis, 1 F.3d 606, 609 (7th Cir. 1993); Matter of Feldberg, 862 F.2d 622, 625 -26 (7th Cir. 1985). There must also be a showing that the attorney's assistance was obtained in furtherance of criminal or fraudulent activity. See Mattenson, 438 F.3d at 769.

The crime - fraud exception applies herein. There is sufficient information to support a prima facie showing that James and Carol Economou committed fraud by transferring James' asset while a mortgage default existed for which the asset could be sought.

The second prong's requirement that the attorney's assistance be obtained in furtherance of fraud or criminal activity is satisfied by Mr. Brodeur's conduct in helping James to transfer his interest in the Sanibel house, possibly preventing creditors from seizing it to satisfy his guarantor liability; helping Carol to sell the Sanibel house to Kathleen and her husband; helping Carol to form Smithers-Jones Investment, Inc.; and helping Smithers-Jones to purchase the Collier Arcade mortgage at the foreclosure sale.

### In Camera Review

The court reviewed in camera the 67 documents[4] submitted by Interveners Carol Economou and Smithers - Jones Investments, Inc. The documents are excepted from the attorney - client privilege because the crime - fraud exception to privilege applies. Ft. Myers' Motion to Compel is

---

[4]The binder has 68 entries; Tab no. #2 bears no document. They were unable to locate no. 2.

Granted. Mr. de'Medici is hereby ordered to disclose all retained documents to Plaintiff Ft. Myers on or before February 26, 2007.[5]

Dated: **February 28, 2007**              **ENTERED:**

                              _____
                              Jacqueline P. Cox
                              **United States Bankruptcy Judge**

---

[5] The court originally issued its *Memorandum Opinion on Ft. Myers Historic, L.P.'s Motion to Compel Documents* ordering Attorney de'Medici to disclose all retained by February 26, 2007 on January 9, 2007.